***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Houser, along with the briefs and arguments on appeal. The Full Commission MODIFIES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 16 October 2001 as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and the subject matter.
2. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all times relevant herein.
3. The carrier on the risk at all relevant times herein was the Insurance Company of the State of Pennsylvania.
4. The plaintiff-employee continued to work for the defendant-employer, Wal-Mart Stores, Inc. as of the date of the hearing.
5. The plaintiff's average weekly wage on the relevant dates herein was $243.75.
6. At the hearing before the Deputy Commissioner, the parties submitted a Packet of the plaintiff's Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2), and a Packet of Industrial Commission Forms, which was admitted into the record, and marked as Stipulated Exhibit (3).
 ***********
Based upon all the evidence adduced from the record, the undersigned makes the following additional:
 FINDINGS OF FACT
1. As of the date of the hearing, the plaintiff was forty-four (44) years of age. The plaintiff has graduated high school and received no other specialized training or education.
2. On 26 February 1996, while working for defendant-employer, the plaintiff was struck by a shopping buggy that was being pushed by a child. The plaintiff testified at the hearing that she then fell into some other buggies, and then onto the floor. The defendants accepted the compensability of this incident through an Industrial Commission Form 60, which was filed on or about 30 April 1996. Through the Form 60, the defendants accepted liability for a chest strain as a result of a compensable incident, and authorized medical treatment for that injury.
3. For approximately two (2) months following her admittedly compensable injury of 26 February 1996, the plaintiff was examined and treated at PrimeCare with complaints of upper chest and upper arm pain. The plaintiff was diagnosed as having sustained a pectoral strain.
4. On 11 April 1996, the plaintiff was examined on referral by Dr. W. Dan Caffrey, an orthopaedic surgeon, for continuing complaints of right chest pain and right arm pain. X-rays of the plaintiff's shoulder and thoracic area were negative, and Dr. Caffrey's initial diagnosis was that the plaintiff had sustained an arm, shoulder, and thoracic area strain. Subsequently, at his deposition, Dr. Caffrey questioned his initial diagnosis, stating that he was not sure based upon the pattern of the plaintiff's symptoms that she had sustained a strain type injury.
5. The plaintiff continued to receive treatment from Dr. Caffrey through September 1996, at which time she was referred to Dr. Jeffrey Schmidt, a neurologist. After releasing the plaintiff from his care, Dr. Caffrey was of the opinion that that her condition did not require a disability rating because there was no objective evidence of any structural defect.
6. The plaintiff was initially examined by Dr. Schmidt on 24 September 1996. After performing an examination, Dr. Schmidt found no evidence of a neuropathic problem, and diagnosed the plaintiff as having musculoskeletal pain of the right anterior chest and posterior shoulder. Subsequently, an MRI and an EMG were performed in an attempt to identify a physiological cause for the plaintiff's continued complaints, but the results of these tests were negative. The plaintiff continued to receive treatment from Dr. Schmidt and physical therapy for right-sided chest and shoulder pain for approximately the next year. Dr. Schmidt was of the opinion that the plaintiff suffered an 8% rating to the plaintiff's right arm. Dr. Schmidt signed a Form 25R giving this rating and signed a letter dated 27 October 1998 referencing this rating assignment.
7. On 24 February 1998, the plaintiff underwent an independent medical examination by Dr. Mark Yates, an orthopedic surgeon. Following the examination, Dr. Yates' assessment was persistent complaints of chest wall pain with normal diagnostic studies. Dr. Yates could not identify any physical injury as the cause of the plaintiff's complaints. Due to the nature of her complaints, and based upon the results of his examination, Dr. Yates did not assign a disability rating to the plaintiff.
8. On 21 December 1998, the plaintiff was again examined at PrimeCare for a knot on her right hand, and continued chest and right arm pain. This was the first reference in the plaintiff's medical records to a right hand or wrist problem.
9. On 15 July 1999, the plaintiff underwent a second independent medical examination performed by Dr. Michael Gwinn. The plaintiff reported to Dr. Gwinn that a bump had appeared on her right wrist approximately one year earlier. The plaintiff also reported experiencing pain in her entire right hand, and what she described as significant pain in her right chest wall. Dr. Gwinn found no objective cause for these symptoms, and could not relate the plaintiff's current symptoms to her 26 February 1996 admittedly compensable injury. Based upon his findings, Dr. Gwinn did not believe that further diagnostic testing or physical therapy was medically necessary. In addition, Dr. Gwinn was of the opinion that that there were no objective findings upon which to base a permanent partial disability rating.
10. On 8 November 2000, the plaintiff was examined by Dr. Ethan Wiesler for another independent medical examination. At this examination, the plaintiff's chief complaint was right wrist pain, and upon examination, Dr. Wiesler found a small bump on the back of the plaintiff's right wrist. Dr. Wiesler was of the opinion that it was highly unlikely that the bump on the plaintiff's right wrist was related to her 26 February 1996 admittedly compensable injury given that there were no complaints or documentation of wrist pain for over two years following that incident. Although he determined that the plaintiff's right wrist condition was not related to a work place injury, Dr. Wiesler did assign a four to five percent permanent partial disability rating to the plaintiff's right hand. With respect to her orthopaedic condition in general, Dr. Wiesler diagnosed the plaintiff as having right upper extremity pain of unknown etiology. Dr. Wiesler did not assign work restrictions to the plaintiff given that no weakness or right upper extremity dysfunction was found.
11. Due to the plaintiff's contention that she could not continue in her job as a customer service manager, she was moved to a job as a fitting room attendant. At the time of the hearing, the plaintiff remained employed by defendant-employer in that capacity. The plaintiff has earned greater than or equal wages in this position as compared to her pre-injury wages.
12. The credible medical and lay evidence of record does not support a finding that the plaintiff's myofascial pain syndrome is the direct and natural result of, or causally related to her 26 February 1996 injury by accident.
13. Plaintiff's applicable workers' compensation rate is $162.50 per week.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. As a result of her compensable injury on 26 February 1996, plaintiff has an 8 percent permanent partial disability of her right arm, for which plaintiff is entitled to compensation at the rate of $162.50 per week for a period of 19 and 1/7 weeks. N.C.G.S. § 97-31(13).
2. The plaintiff's myofascial pain syndrome is not the direct and natural result of, or causally related to her 26 February 1996 injury by accident, and she is therefore not entitled to medical treatment for that condition. N.C.G.S. §§ 97-2(6); 97-25.
3. The plaintiff is not entitled to permanent partial disability compensation for the myofascial pain syndrome. N.C.G.S. § 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. For her eight percent permanent partial disability of the right arm, defendants shall pay to plaintiff permanent partial disability compensation at the rate of $162.50 per week for a period of 19 and 1/7 weeks. This amount shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in paragraph 2.
2. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid in a lump sum.
3. The defendants shall bear the costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER